**Daniel J. Weintraub - Bar #132111**
**James R. Selth – Bar #123420**
**WEINTRAUB & SELTH, APC**
**11766 Wilshire Boulevard, Suite 1170**
**Los Angeles, CA 90025**
**Telephone: (310) 207-1494**
**Facsimile: (310) 442-0660**

Attorneys for Chapter 11 Debtor and Plan Proponent
ELM STREET PARTNERS, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>ELM STREET PARTNERS, LLC,<br><br>    Debtor and Debtor in Possession. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:11-bk-20225-PC<br><br>Chapter 11 Case<br><br>**DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION OF ELM STREET PARTNERS, LLC**<br><br>**<u>Disclosure Statement Hearing:</u>**<br>Date:   August 24, 2011<br>Time:   9:30 a.m.<br>Place:  Courtroom 1539<br>          255 E. Temple St.<br>          Los Angeles, CA<br><br>**<u>Plan Confirmation Hearing:</u>**<br>Date:   To Be Set<br>Time:   To Be Set<br>Place:  Courtroom 1539<br>          255 E. Temple St.<br>          Los Angeles, CA |

# <u>TABLE OF CONTENTS</u>

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION ……………………………………………………… | 2 |
|  | A. Purpose of This Document ……………………………………… | 3 |
|  | B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing … | 4 |
|  |     1. Time and Place of the Confirmation Hearing …………………… | 4 |
|  |     2. Deadline For Voting For or Against the Plan …………………… | 4 |
|  |     3. Deadline For Objecting to the Confirmation of the Plan ………….. | 5 |
|  |     4. Identity of Person to Contact for More Information Regarding the Plan …………………………………………………… | 5 |
|  | C. Disclaimer ………………………………………………… | 5 |
| II. | BACKGROUND …………………………………………………… | 5 |
|  | A. What follows is a Brief Summary of the Dates and Circumstances That Led the Debtor to File the Case……………………………………… | 5 |
|  | B. Equity Interests in the Debtor…………………………………..…… | 7 |
|  | C. The Debtor's Assets………………………………………………… | 7 |
|  | D. The FCB Litigation………………………………………………… | 8 |
|  | E. Events Occurring After Bankruptcy Filing …………………………… | 9 |
|  |     1. Employment of Professionals…………………………………… | 9 |
|  |     2. Claims Deadline……………………………………………… | 10 |
|  |     3. Cash Collateral and Adequate Protection………………………… | 10 |
|  |     4. Turnover of Property by the Receiver…………………………… | 10 |
|  |     5. Motion for Rule 2004 Examination of Receiver………………… | 10 |
|  |     6. The Litigation Filed Against FCB……………………….…...…… | 11 |
|  |     7. Designation as Single Asset Real Estate………………………… | 11 |
|  |     8. Efforts to Complete and Market Condominium Units…………… | 11 |
| III. | SUMMARY OF THE PLAN …………………………………….…... | 12 |
|  | A. Introduction – Impact on Creditors………………………………..... | 12 |
|  | B. Payment Distribution Scheme Based on Pending FCB Litigation……….. | 13 |
|  | C. Section 1111(b) Election Not Applicable…………………..…………… | 14 |
| IV. | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN……………………………………………………… | 15 |
|  | A. What Creditors and Interest Holders Will Receive Under the Plan ……… | 15 |
|  | B. Unclassified Claims ……………………………………………… | 15 |
|  |     1. Administrative Expenses ………………………………………… | 15 |
|  |     2. Priority Claims ……………………………………………….... | 16 |
|  |     3. Priority Tax Claims…………………………………………… | 17 |
|  | C. Classified Claims and Interests …………………………………… | 17 |
|  |     1. Class of Secured Claims …………………………………….….. | 17 |
|  |     3. Class of General Unsecured Claims ……………………………… | 28 |
|  |     4. Class of Interest Holders ……………………………………… | 28 |

i

D.  Means of Effectuating the Plan ......................................................... 29
    1.  Funding for the Plan and Post Confirmation Management........... 29
    2.  Disbursing Agent ............................................................ 29
    3.  Objections to Claims ....................................................... 29
    4.  Interest Pending Allowance of Claims ................................. 30
    5.  Distributions to be Made Pursuant to the Plan ...................... 30
    6.  Exculpations and Releases ............................................... 31
    7.  Injunctions .................................................................. 32
E.  Risk Factors ................................................................................ 32
F.  Other Provisions of the Plan ........................................................... 33
    1.  Executory Contracts and Unexpired Leases ......................... 33
        a)  Assumptions ........................................................ 33
            (i)    Schedule of Assumed Agreements ................... 33
            (ii)   Cure Payments ......................................... 33
            (iii)  Objections to Assumption or Proposed Cure
                   Payments................................................ 33
        b)  Rejections .......................................................... 34
    2.  Retention of Jurisdiction ................................................. 34
G.  Prosecution of Claims and Causes of Action Including Avoidance Actions. 36
H.  Tax Consequences of Plan............................................................... 37

V.  CONFIRMATION REQUIREMENTS AND PROCEDURES ........................ 37
A.  Who May Vote or Object ................................................................ 38
    1.  Who May Object to Confirmation of the Plan ....................... 38
    2.  Who May Vote to Accept/Reject the Plan ............................ 38
        a)  What Is an Allowed Claim/Interest ............................ 38
        b)  What Is an Impaired Claim/Interest ........................... 39
    3.  Who is Not Entitled to Vote ............................................. 39
    4.  Who Can Vote in More Than One Class .............................. 40
    5.  Votes Necessary to Confirm the Plan ................................. 40
    6.  Votes Necessary for a Class to Accept the Plan ..................... 40
    7.  Treatment of Nonaccepting Classes ................................... 40
    8.  Request for Confirmation Despite Nonacceptance by Impaired
        Class(es) .................................................................... 41
B.  Liquidation Analysis ..................................................................... 41
C.  Feasibility .................................................................................. 42

VI. EFFECT OF CONFIRMATION OF PLAN ........................................... 44
A.  Revesting of Property in the Reorganized Debtor ................................. 44
B.  Modification of Plan...................................................................... 44
C.  Post-Confirmation Status Report....................................................... 44
D.  Quarterly Fees............................................................................. 44
E.  Post-Confirmation Conversion/Dismissal ........................................... 45
F.  Final Decree ............................................................................... 45
G.  Conclusion.................................................................................. 46

DECLARATION OF DENIS HANN  ..................................................... 47

ii

# I.

## INTRODUCTION

Elm Street Partners, LLC, a California limited liability company, is the debtor and debtor-in-possession (the "Debtor"), in the above-captioned chapter 11 bankruptcy case (the "Case"). The Debtor commenced the Case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 et seq., on March 8, 2011 (the "Petition Date").   Chapter 11 allows the Debtor, the creditors and other parties in interest to propose a plan of reorganization.  A plan of reorganization may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor is the party proposing the Chapter 11 Liquidating Plan of Reorganization (the "Plan") sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT ("Disclosure Statement") FOR THE PLAN.

This is a liquidation Plan.  The Debtor is the owner of a twenty-nine (29) unit condominium conversion project located at 304 S. Elm Street in Beverly Hills, California ("Elm Street Property").  As described more fully below, the Elm Street Property is encumbered by several deeds of trust as well as numerous mechanics liens arising from the project.   Also, the Debtor asserts claims against secured creditor First-Citizens Bank & Trust Company ("FCB"), which are the subject of litigation in a pending lawsuit filed by the Debtor against FCB.  The Debtor's litigation against FCB in the Los Angeles County Superior Court seeks damages against FCB for breach of contract and other causes of action, which litigation is more thoroughly described in Section II(D) of this Disclosure Statement.

The Plan generally provides for the orderly sale of all 29 units at the Elm Street Property over a period of time not to exceed eighteen (18) months after the Effective Date of the Plan ("Effective Date").   The Plan also provides for a distribution scheme to all allowed creditors in accordance with the priority of their claims following resolution of the litigation against FCB.

The Effective Date is the first business day which is at least thirty (30) days following the date of entry of the Bankruptcy Court order confirming the Plan ("Plan Confirmation Order"), providing there has been no order entered staying the effectiveness of the Plan Confirmation Order.  If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date will be on the first business day after the stay is no longer in effect with respect to the Plan Confirmation Order.  Following the Effective Date, the Debtor will be referred to herein as the Reorganized Debtor.

**A.    Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan, and includes information relating to the Plan and the Plan Confirmation process.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

**(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE DEBTOR'S BANKRUPTCY CASE,**

**(4)    WHAT ISSUES THE COURT WILL CONSIDER WHEN DECIDING WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.

3

Be sure to read the Plan as well as this Disclosure Statement.  If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The United States Bankruptcy Court for the Central District of California (the "Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.      Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, 2011 at 9:30 a.m. in Courtroom 1539, located at 255 E. Temple St., Los Angeles, California 90012.

**2.      Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to James R. Selth, Esq., of Weintraub & Selth, APC, 11766 Wilshire Blvd., Suite 1170, Los Angeles, CA 90025.  Your ballot must be received by 5:00 p.m. PST, on _____, 2011, or it will not be counted.

//

//

4

**3.    Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon

counsel for the Debtor at Weintraub & Selth, APC, 11766 Wilshire Blvd., Suite 1170, Los

Angeles, CA 90025 by _____, 2011.

**4.    Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact James R.

Selth, Esq., of Weintraub & Selth, APC, 11766 Wilshire Blvd., Suite 1170, Los Angeles,

California 90025, Telephone: (310) 207-1494.

**C.    Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtor's books and

records which, unless otherwise indicated, are unaudited.  The information contained in this

Disclosure Statement is provided solely by the Debtor or based upon information available to the

public.  The Debtor represents that everything stated in this Disclosure Statement is true and

correct to the Debtor's best knowledge.  The Court has not yet determined whether or not the

Plan is confirmable and makes no recommendation as to whether or not you should support or

oppose the Plan.

**II.**

**BACKGROUND**

**A.    What Follows is a Brief Summary of the Dates and Circumstances that Led the
Debtor to File the Case.**

The Debtor was formed on November 10, 2004, and on November 18, 2004, it acquired

the real property located at 304 South Elm Drive (the "Elm Street Property") which was, at the

time, a 29 unit apartment complex.  Initially, the Elm Street Property was approved for

conversion into a Housing Stock Cooperative.  However, the approval required cost prohibitive

5

renovations.  So, in 2007, the Debtor obtained the City of Beverly Hills's approval to convert the Elm Street Property into condominiums.  In order to complete the conversion, the Debtor was required to complete certain renovations to the Elm Street Property which required that all tenants be removed.  In May of 2007, the Debtor obtained a construction loan from First Regional Bank ("First Regional") in the sum of $15,000,000.00 for the conversion.

Because of complications obtaining the required building permits from the City of Beverly Hills for the conversion and unrelated difficulties with the original general contractor in charge of the construction, the construction work was not completed and the loan proceeds were exhausted.  In order to complete the conversion and in January of 2009, the Debtor raised $550,000.00 from its members and First Regional agreed to increase the amount of the construction loan by $1,200,000.00, for an aggregate loan amount of $16,200,000.00.  When it appeared that the Debtor was nearing completion of the required construction work, First Regional began experiencing financial difficulties and wrongfully failed to disburse to the Debtor  the last $400,000.00 of the additional $1,200,000.00, which prevented the completion of construction, and led to the Debtor's default on the loan.  This also left the Debtor unable to pay many of the contractors working on the project, and at least six lawsuits were filed against the Debtor for unpaid fees and materials.

On January 29, 2010, First Regional was taken into receivership by the Federal Deposit Insurance Corporation ("FDIC") and the FDIC proceeded to sell First Regional's loans.  The Debtor is informed and believes that First-Citizens Bank & Trust Company ("FCB") acquired the Debtor's loan from the FDIC or First Regional.  On March 3, 2010, FCB recorded a Notice of Default, and on April 9, 2010, the FCB filed a judicial foreclosure action in the Los Angeles County Superior Court and sought the appointment of a receiver for the Elm Street Property.  The Motion was unopposed and granted on May 27, 2010, and James Guthrie was appointed as Receiver.  FCB claims it has advanced another $1,000,000.00 to Mr. Guthrie to complete the

Elm Street Property so that the conversion can be completed and the units can be sold as

condominiums.

Upon completion, Mr. Guthrie intended to market and sell the individual units at the Elm

Street Property and in fact, a motion was pending in the State Court Action which would have

empowered Mr. Guthrie to liquidate the units with minimal supervision.  The Debtor, however,

learned that Mr. Guthrie intended to price the individual units at a very price point since FCB

like acquired the Debtor's loan at a discount and therefore, it could afford to sell the units at a

low price given its limited exposure, to the detriment of all other creditors of the estate.

On March 9, 2011, the Debtor filed the Chapter 11 case to stop the non-judicial

foreclosure sale of the Elm Street Property and preserve the ability to sell the 29 condominium

units that comprise the Elm Street Property in an orderly fashion to maximize value and pay off

all secured claims and other creditors, with the hope of providing a distribution to the Debtor's

equity security holders.

**B.**    **Equity Interests in the Debtor**

The Debtor is a California limited liability company that was formed in November 2004

to acquire and develop the Elm Street Property.  The managing member of the Debtor is Queenie

Properties, LLC, and the manager of Queenie Properties, LLC is Denis Hann.  There are thirty

(30) members of the Debtor, and a complete list of the members is attached as **Exhibit 1**.

**C.    The Debtor's Assets.**

The Debtor's only real property asset is the Elm Street Property, which the Debtor values

at $20 million, based on the projected sales prices for the 29 units provided by the Debtor's real

estate broker, Hilton & Hyland, Christie's International Real Estate.   See **Exhibit 2** attached

hereto.  The Proof of Claim filed in the bankruptcy case by FCB on June 14, 2011 also values the

Elm Street Property at $20 million as do many other secured claimants  The common area and

condominiums are almost fully completed and a Certificate of Occupancy for the building is

anticipated to be issued on or before July 31, 2011.   The Debtor is working with its contractor to complete the final units, and individual Certificates of Occupancy for all 29 units are anticipated to be issued on or before August 31, 2011.

The Debtor also owns a $90,000 deposit in escrow towards future Homeowners Association fees, a judgment against a former subcontractor in the sum of $228,418.00 and the claims against FCB which are the subject of the Superior Court litigation referenced below.

**D.     The FCB Litigation.**

The FCB Litigation is a pending lawsuit involving claims for breach of contract, implied contractual indemnity, abuse of process, fraud and injunctive relief.  The Complaint was filed in the Los Angeles County Superior Court on June 14, 2011 by the Debtor's special litigation counsel, William Litvak of Dapeer, Rosenblit & Litvak, LLP.  The Debtor alleges in the Complaint that FCB's predecessor in interest, First Regional Bank, breached its contract with the Debtor when it refused to honor legitimate requests for distribution of draws and failed to disburse funds.  The Debtor alleges that First Regional Bank further breached its contract with the Debtor when it represented that it would extend the maturity date of the loan and provide additional funding if additional capital was raised by the Debtor's members, and that after First Regional Bank was closed by the FDIC in January, 2010 and the loan was acquired by FCB, that FCB breached the terms of the Debtor's amended loan agreement with First Regional Bank by wrongly declaring a default and initiating foreclosure proceedings.  The Debtor alleges that First Regional Bank made knowingly false representations about its intentions to honor the Debtor's legitimate funding requests at a time that it knew it would not be able to honor the requests and comply with its contractual obligations to the Debtor due to its perilous financial condition and imminent take over by the FDIC.

The Debtor's Complaint also alleges that the actions of FCB and its predecessor in interest in refusing to honor legitimate requests for distribution of draws and failing to disburse

funds led to the several lawsuits filed against the Debtor by unpaid contractors working on the Elm Street Property project, requiring FCB to indemnify the Debtor for such claims. Finally, the Debtor's Complaint alleges that FCB is liable for abuse of process for wrongfully obtaining the appointment of a receiver in order to sell the individual condominium units without the legal responsibility attendant to the sale of new housing.

The Debtor may have claims against FCB exclusive to the jurisdiction of the Bankruptcy Court, including claims for equitable subordination under Section 510(c) of the Bankruptcy Code, which the Debtor is still investigating. Should such claims be filed, the Debtor reserves the right to amend this Disclosure Statement and the Plan of Reorganization to provide for alternate treatment of the claims of all creditors based upon a potential complete or partial subordination of FCB's claim.

**E.    Events Occurring After Bankruptcy Filing.**

**1.    Employment of Professionals**

At the inception of the Case, Debtor retained Weintraub & Selth, APC ("WS"), to serve as general bankruptcy counsel. On May 2, 2011, the Court entered an order authorizing the Debtor to employ WS as its general bankruptcy counsel to assist in the administration of the Case and reorganization of the Debtor's business affairs. (Docket No. 36).

The Debtor promptly retained an experienced real estate broker to market and sell the Elm Street Property condominium units, and on April 22, 2011, the Court entered an order authorizing the Debtor to employ Hilton & Hyland, Christie's International Real Estate as real estate broker to market and sell the Elm Street Property condominium units. (Docket No. 32).

Due to the anticipated litigation with FCB, the Debtor engaged William Litvak of Dapeer, Rosenblit & Litvak, LLP ("DRL") to act as special litigation counsel to the estate on a contingency fee basis. On June 6, 2011, the Court entered an order authorizing the Debtor to employ DRL as special litigation counsel to pursue the FCB litigation. (Docket No. 53).

### 2.    Claims Deadline

On March 10, 2011, the Debtor filed a Motion to set a bar date for the filing of Proofs of

Claim, and an Order Setting Claims Bar Date and a deadline of June 15, 2011 to file Proofs of

Claim was entered on April 4, 2011.  (Docket No. 22).

### 3.    Cash Collateral and Adequate Protection

Because there is no income generated by the Elm Street Property, there is no issue relating

to the use of cash collateral, and no adequate protection payments are being made to FCB or any

other secured creditor, nor will any such adequate protection payments be made under the

Debtor's Liquidating Plan of Reorganization (the "Plan").  The Debtor, however, does intend to

make interest payments to FCB from the available sales proceeds during the pendency of the

FCB Litigation which could be considered adequate protection payemnts.

### 4.    Turnover of Property by the Receiver

The Receiver was in possession of the Elm Street Property at the time the Chapter 11

case was filed.  Immediately after the case was filed, the Debtor made demand on FCB and the

Receiver for turnover of the property pursuant to 11 U.S.C. Section 543, and a Motion to Compel

Turnover was filed on March 30, 2011.  On May 2, 2011, the Court entered its Order Granting

Motion to Compel State Court Receiver to Turnover Real Property and Comply with 11 U.S.C.

Section 543.  (Docket No. 35).

### 5.    Motion for Rule 2004 Examination of Receiver

The Debtor and the Receiver filed a Stipulation on May 12, 2011 for an examination of

the Receiver pursuant to Bankruptcy Rule 2004, and an Order approving the Stipulation was

entered on May 13, 2011.  (Docket No. 45).  The Rule 2004 Examination of the Receiver was

conducted by the Debtor's special litigation counsel, William Litvak, on May 19, 2011 with a

second day of questioning to be scheduled.

//

6.      **The Litigation Filed Against FCB**

As stated in Section II(D) above, the Debtor engaged William Litvak of Dapeer, Rosenblit & Litvak, LLP ("DRL") to act as special litigation counsel to the estate. On June 14, 2011, the Debtor filed a Complaint against FCB filed in the Los Angeles County Superior Court, Case No. BC463502 (the "FCB Litigation").

7.      **Designation as Single Asset Real Estate**

On May 4, 2011, FCB filed a Motion for Order Determining that Real Property Owned by Debtor is "Single Asset Real Estate" and that Debtor is Subject to 11 U.S.C. Section 362(d)(3). In order to avoid an unnecessary Court appearance on the Motion, the Debtor executed a Stipulation that the Elm Street Property is "Single Asset Real Estate" and that the Debtor is Subject to 11 U.S.C. Section 362(d)(3) (the "Stipulation"). An Order approving the Stipulation was entered on May 23, 2011. (Docket No. 50).

8.      **Efforts to Complete and Market Condominium Units**

In addition to retaining Hilton & Hyland, Christie's International Real Estate, a leading Beverly Hills real estate broker with experience in marketing condominium conversion projects in the city, the Debtor has taken the following steps to prepare the 29 units at the Elm Street Property for sale:

- Retained contractors to make the final completions of the common areas of the building and the 29 units;

- Worked with Hilton & Hyland, Christie's International Real Estate to develop a marketing strategy encompassing not only local targeted buyers but also national and international buyers looking to live in Beverly Hills, with an initial projected marketing budget of $55,000;

- Interviewed lenders who would service buyers borrowing needs and coordinate the project approvals required for condo conversion developments;

- Consulted experts in processing FHA and FNMA project approvals for the Elm Street Property to attract a broader category of potential buyers and expand the available financing options for such buyers.

- Consulted with a title company and escrow company to coordinate issues involved in the sale of individual units.

All of these items are integral to executing the Debtor's marketing plan and maximizing the sales proceeds for the benefit of all creditors.


## III.

## SUMMARY OF THE PLAN

**A.    Introduction – Impact on Creditors.**

The Debtor has drafted the Plan in such a way that the Plan can be confirmed before the FCB Litigation is resolved.  The payment distribution scheme set forth in the Plan reserves most of the sale proceeds until the FCB Litigation is complicated and provides for creditor claims to be paid according to their priority.  Because of the payment distribution scheme contained in the Plan and which is summarized in this section, Plan confirmation will not be delayed by the FCB Litigation.

If the Plan is confirmed and the Debtor succeeds in obtaining a judgment or settlement with FCB resulting in a significant offset to FCB's senior secured claim, then depending on the final sale prices for the 29 units of the Elm Street Property, there should be sufficient funds to make full distribution to all the Debtor's allowed junior secured creditors, and, depending on the size of the offset and the resulting allowed claim of FCB, there may also be sufficient funds to make a distribution to Debtor's unsecured creditors up to the full amount of their claims, and thereafter to equity interest holders of the Debtor.

If the Plan is not confirmed, junior secured creditors and unsecured creditors will receive no distribution, due to the fact that it is likely that FCB will be allowed to foreclose on the Elm Street Property, and there are no other income producing assets available to generate a distribution to any other creditors.  Accordingly, the Debtor believes confirmation of the Plan is clearly in the best interests of creditors and recommends that creditors vote in favor of the Plan.

A Motion to approve the procedures for the sale of the 29 units of the Elm Street Property and to escrow the funds for payment under the Plan ("Sale Procedures Motion") will be filed by the Debtor to be heard concurrently with the hearing on this Disclosure Statement, and those procedures which are approved by order of the Court ("Sale Procedures Order") will be incorporated into the Plan.  The Sales Procedure Motion will address the Court rulings required by the title company, the requirements for FCB to release its against single units being sold and approve the details related to the Sales Proceeds Escrow Account (defined below) that will be established to reserve funds for distribution pending an outcome of the FCB Litigation.

**B.      Payment Distribution Scheme Based on Pending FCB Litigation**

As stated in Section II(D) above, the Debtor filed a Complaint against FCB filed in the Los Angeles County Superior Court, Case No. BC463502, which seeks recovery of damages for claims for breach of contract, implied contractual indemnity, abuse of process, fraud and injunctive relief.

FCB has filed a Proof of Claim in the principal sum of $16,408,648.79, and in the total sum of $17,568,135.70 as of the date the case was filed (March 9, 2011), including interest and late charges.  As set forth below, the FCB Claim as been designated as the Class 1 Claim in the Debtor's Plan.  FCB claims interest is accruing on its Class 1 Claim at $2,392.93 per day.

If the Debtor prevails in its litigation against FCB, either by judgment or settlement, it will have an offset against this Class 1 Claim in an amount to be determined.  Pursuant to the

Debtor's retainer agreement with special counsel Dapeer, Rosenblit & Litvak, LLP ("DRL"), as approved by the Court, DRL will be entitled to a contingency fee of forty (40%) percent of the gross amount of damages, affirmative relief or debt reduction obtained for the Debtor, and said contingency fee is secured by a lien on the Debtor's litigation claims.

The Plan provides that if the FCB Litigation is pending on the Effective Date, then subject to the Court's approval of the Sale Procedures Motion, all net proceeds received after allowed closing costs from the sales of the 29 units of the Elm Street Property will be paid to an escrow account ("Sale Proceeds Escrow Account"), FCB will be paid from these net sale proceeds until interest on its secured claim has been paid in full, and all remaining sums will be held in the Sale Proceeds Escrow Account pending the resolution of the FCB Litigation.

Except as set forth below, upon final conclusion of the FCB Litigation, the funds in the Sale Proceeds Escrow Account (the "Escrowed Funds") will be paid to FCB in the amount of its final allowed claim, and then to allowed junior secured claims (Classes 2-18) in order of priority, then to allowed reimbursement claims, then pro rata to allowed unsecured claims, and then pro rata to equity interest holders of the Debtor.  The amount available to pay allowed unsecured claims will depend on the total amount of sales proceeds for the 29 units, the final amount of FCB's final allowed claim, and the final amounts of allowed junior secured claims.

C.    **Section 1111(b) Election Not Applicable**

Section 1111(b) of the Bankruptcy Code allows an undersecured creditor to elect to have its claim treated as entirely secured rather than be bifurcated into an unsecured claim and secured claim based on the valuation of the security for the claim.  Based on the estimated value of the Elm Street Property, all secured claims are oversecured and no claims are bifurcated under the Plan.  As such, no secured creditor needs to make the Section 1111(b) to be treated as fully secured.

# IV.

## CLASSIFICATION AND TREATMENT OF

## CLAIMS AND INTERESTS UNDER THE PLAN

**A.      What Creditors and Interest Holders Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has <u>not</u> placed the following claims in a class:

**1.      Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Case that are allowed under Bankruptcy Code Section 507(a)(1).  The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.  WS and DRL shall agree to receive payment over time if necessary in order than Plan feasibility not be an issue.

The following chart lists all of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan:

//

//

//

//

| Name | Amount Owed | Treatment |
|---|---|---|
| Debtor's bankruptcy counsel Weintraub & Selth, APC | $ 65,000.00 (estimated) | Paid in full from cash on hand upon the later of (a) the Plan's Effective Date, or (b) the entry of a Bankruptcy Court order allowing the fees. |
| Office of the U.S. Trustee Fees | $    350.00 (estimated) | Paid in full upon Effective Date. |
| Special Litigation Counsel Dapper, Rosenblit & Litvak | $    To be determined (contingency) | Contingency fee paid from proceeds of judgment or settlement in FCB Litigation, and upon the entry of a Bankruptcy Court order allowing the fees. |
| Queenie Properties, LLC (Insider Administrative Reimbursement Claim) | $100,000.00 (estimated) | Paid in full from cash on hand upon the later of (a) payment in full of all allowed secured claims, or (b) the entry of a Bankruptcy Court order allowing the claim. |
| **TOTAL** | $165,350.00  (estimated) | |

Court Approval of Fees Required:

The Court must allow all fees listed in this chart before the fees can be paid, except for fees owing to the Clerk's Office and U.S. Trustee or fees to be paid from non-Debtor sources. The professional in question must file and serve a properly noticed fee application, and the Court must rule on the application.  Only the amount of fees allowed by the Court will be required to be paid under the Plan.  As discussed in this Disclosure Statement, the Debtor will have sufficient cash on hand on the Effective Date to satisfy the foregoing administrative claims, which sums shall be advanced by Queenie Properties, LLC as set forth below.

The chart above includes the administrative claim of Queenie Properties, LLC for reimbursement of his/its payments to administer this case ("Insider Administrative Reimbursement Claim"). If the Plan is confirmed, the Insider Administrative Reimbursement Claim will be paid as described above subject to Court approval.

**2.    Priority Claims**

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority

treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims. The Debtor is not aware of any claims that would qualify as Sections 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims under the Plan.

### 3. Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Bankruptcy Code Section 507(a)(8).  The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in regular installments of cash over a period not exceeding five (5) years from the date of the order for relief.

| Name | Amount Owed | Treatment |
|---|---|---|
| Franchise Tax Board  ("FTB") | $    1,629.28 | FTB shall be paid its entire allowed claim on the first day of the 19th full month following the Effective Date, estimated as July 1, 2013. |
| **TOTAL** | $    1,629.28 | |

## C. Classified Claims and Interests

### 1. Class of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following charts list the classes containing the Debtor's secured pre-petition claims and their treatment under the Plan.  **Exhibit 3** consists of a chart showing all secured claims against the estate.  The Debtor reserves the right to file objections to any claims.

### Class 1 – First-Citizens Bank & Trust Company ("FCB")

Class 1 consists of FCB's secured claim as a first trust deed holder, which is secured by the Elm Street Property valued at $20,000,000, subject to offset for the Debtor's claims in the

FCB Litigation for breach of contract, implied contractual indemnity, abuse of process, fraud and injunctive relief.  FCB filed a claim in the amount of $17,568,135.70 and claims that interest is accruing on its Class 1 Claim at $2,392.93 per day.  The payment of FCB's Class 1 claim is dependent upon the outcome of the Debtor's litigation against FCB.  The distribution of such proceeds shall depend upon the outcome of the litigation and shall be in accordance with the Plan's terms.

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: First-Citizens Bank & Trust Company ("FCB") (Deed of Trust)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 1st<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $17,568,135.70<br><br>(per Proof of Claim) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 1 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>The Class 1 claimant shall receive payments of accrued interest from the first sale proceeds received in the Sale Proceeds Escrow Account, until the FCB litigation has been concluded.<br><br>Upon conclusion of the FCB litigation, the Class 1 allowed secured claim (less any offset) shall be paid in full plus 5.25% interest per annum from the petition date from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>Upon the first receipt of funds in the Sale Proceeds Escrow Account, estimated as December 1, 2011.<br><br>End Date<br>The later of the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation.<br><br>If any units remain unsold at the End Date, the Class 1 claimant shall be entitled to relief from stay to complete its foreclosure of said unsold units. |
| | | | | |

18

**Classes 2-18 – Claims Secured by Junior Liens on Elm Street Property**

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of: Joseph D. Block and Caron Levinson Block, Trustees (Deed of Trust)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 2nd<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $111,293.00<br><br>(per Proof of Claim filed jointly with Class 3 claim in total sum of $181,350.00) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 2 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of the Class 1 allowed secured claim (less any offset), the Class 2 allowed secured claim shall be paid in full plus 5.25% interest per annum from the petition date from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of the Class 1 allowed secured claim (less any offset), estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |
| 3 | Secured claim of: Joseph D. Block and Caron Levinson Block, Trustees (Deed of Trust)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 3rd<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $69,057.00<br><br>(per Proof of Claim filed jointly with Class 3 claim in total sum of $181,350.00) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 3 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 3 allowed secured claim shall be paid in full plus 5.25% interest per annum from the petition date from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Secured claim of: Clifford Muller (Deed of Trust)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 4th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $140,000<br><br>(per Debtor's Schedules – no Proof of Claim filed) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 4 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 4 allowed secured claim shall be paid in full plus 5.25% interest per annum from the petition date from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |
| 5 | Secured claim of: Eagleston Pacific (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 5th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $16,108.00<br><br>(per Proof of Claim – filed as unsecured, however title report reflects recorded mechanic's lien) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 5 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 5 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 6 | Secured claim of: Pico Cabinets & Contracting, Inc. (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 6th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $9,122.00<br><br>(per Debtor's Schedules – no Proof of Claim filed) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 6 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 6 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation |
| 7 | Secured claim of: Construction Management and Supervision (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 7th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $269,715.27<br><br>(per Proof of Claim) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 7 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 7 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 8 | Secured claim of: Penhall Company (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 8th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $2,550.00<br><br>(per Debtor's Schedules – no Proof of Claim filed) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 8 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 8 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation |
| 9 | Secured claim of: Express Flooring 2000 dba Roma Flooring (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 9th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $61,149.00<br><br>(per Debtor's Schedules – no Proof of Claim filed) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 9 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 9 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 10 | Secured claim of: Ultimate Painting Services (scheduled as Loreno Leandro) (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 10th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $72,751.94<br><br>(per Proof of Claim) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 10 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 10 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation |
| 11 | Secured claim of: Hakim Electric (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 11th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $19,068.32<br><br>(per Debtor's Schedules – no Proof of Claim filed) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 11 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 11 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 12 | Secured claim of: Karl Brook (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 12th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $188,041.89<br><br>(per Proof of Claim) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 12 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 12 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation |
| 13 | Secured claim of: Ontario Refrigeration Service, Inc. (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 13th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $45,619.00<br><br>(per Debtor's Schedules – no Proof of Claim filed) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 13 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 13 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 14 | Secured claim of: Rolling Stone Tile & Marble (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 14th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $9,215.82<br><br>(per Proof of Claim – filed as unsecured, however title report reflects recorded mechanic's lien) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 14 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 14 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation |
| 15 | Secured claim of: Mark T. Poole Construction (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 15th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $2,270.00<br><br>(per Debtor's Schedules – no Proof of Claim filed) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 15 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 15 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 16 | Secured claim of: Francisco F.D.M. Construction (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 16th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $4,500.00<br><br>(per Debtor's Schedules – no Proof of Claim filed) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 16 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 16 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation |
| 17 | Secured claim of: Sign Zone, Inc. (Mechanic's Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 17th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $4,013.86<br><br>(per Debtor's Schedules – no Proof of Claim filed; scheduled as unsecured, however title report reflects recorded mechanic's lien) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 17 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 17 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 18 | Secured claim of: Swedelson & Gottlieb (Judgment Lien)<br><br>Collateral description = Elm Street Property<br><br>Claim Priority = 18th<br><br>Collateral value = $20,000,000.00<br><br>Total Amount of Claim = $3,752.73<br><br>(per Proof of Claim) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Treatment<br><br>The Class 18 claimant shall retain its lien on the unsold units of the Elm Street Property until released in accordance with the Sale Procedures Order and until its allowed claim is paid in full.<br><br>Upon conclusion of the FCB litigation, and payment in full of all senior secured classes, the Class 18 allowed secured claim shall be paid in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all senior secured classes listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |

//

//

//

//

//

//

//

//

//

//

//

//

27

### 3.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy

Code Section 507(a).  **Exhibit 4** consists of a chart showing all unsecured claims against the

estate.  The following chart identifies the Plan's treatment of the classes containing all of the

Debtor's general unsecured claims.  The Debtor reserves the right to file objections to any

claims.

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 19 | Claims: All General Unsecured Claims<br><br>Amount of all claims Approximately $422,663.11 (scheduled claims plus filed claims) | N | Y<br><br>Allowed claims in this class are entitled to vote on the Plan | Upon conclusion of the FCB litigation, and payment in full of all allowed secured claims and any allowed Insider Administrative Reimbursement Claim, the Class 19 allowed unsecured claims shall be paid *pro rata* until in full with no interest from the funds received in the Sale Proceeds Escrow Account.<br><br>Start date<br>After payment in full of all allowed secured claims and allowed Insider Administrative Reimbursement Claim, listed above, estimated as December 1, 2012.<br><br>End Date<br>No later than the 19th full month following the Effective Date, estimated as July 1, 2013, or the final resolution of the FCB Litigation. |

### 4.    Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the

Debtor.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 20 | All Equity Interests in Debtor –<br><br>As listed on **Exhibit 1** | Y | N<br><br>(Interests in this class are deemed to have rejected the Plan) | Upon payment in full of all allowed secured claims, any allowed Insider Administrative Reimbursement Claim and unsecured claims, the Class 20 interest holders shall be paid *pro rata* all remaining funds in the Sale Proceeds Escrow Account. |

**D.     Means of Effectuating the Plan**

**1.     Funding for the Plan and Post Confirmation Management**

The Plan will be funded by the sale of the 29 units of the Elm Street Property.  Payment of ongoing expenses to maintain the Elm Street Property until all units have been sold will be advanced by Queenie Properties, LLC as an Insider Administrative Reimbursement Claim, pursuant to Section IV(B)(1), subject to Court approval.  The Debtor will be managed following Plan confirmation by its managing member, Queenie Properties, LLC.

**2.     Disbursing Agent**

Until all allowed secured claims are paid, a licensed California escrow company shall serve as the Disbursing Agent under the Plan and make Plan disbursements of all allowed secured claims.  Upon payment of all allowed secured claims, Weintraub & Selth, APC, the Debtor's counsel, shall serve as the Disbursing Agent under the Plan and shall make Plan disbursements pursuant to the calculations of the *pro rata* share for each allowed general unsecured Class 19 claimant, and thereafter, if applicable, to Class 20 interest holders.  The cost of this service is estimated to be $2,000.

**3.     Objections to Claims**

Pursuant to 11 U.S.C. § 502(a), any party in interest may assert objections to claims.  Objections to claims shall be served and filed no later than December 15, 2011, unless such deadline is extended by the Court.  The Claims Bar Date in this case was June 15, 2011.  As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan.  The Court will retain jurisdiction over the Debtor, the Reorganized Debtor and the Case to resolve such objections to claims following the confirmation of the Plan.

//

Nothing contained in the Plan will constitute a waiver or release by the Debtor of any rights of setoff or recoupment, or of any defense, it may have with respect to any claim. The Disbursing Agent will withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any particular class as if such claims were allowed in full.

**4.    Interest Pending Allowance of Claims**

Except as specifically provided for in the Plan, in the order confirming the Plan, or in some other order of the Court, interest will not accrue on claims and no holder of a claim will be entitled to interest accruing on or after the Petition Date on any claim. Nothing set forth herein will limit or impair the accrual of interest provided for Class 1-4 secured claims, whose respective treatments are described above.

To the extent the Debtor or any other party in interest objects to the allowance of any claim, nothing in the Plan or herein will be deemed to imply or create for the holders of any Disputed Claims any entitlement to receive interest upon the allowed amount of any such Disputed Claims as a result, *inter alia*, of the delay in payment of such claims, except as expressly stated in the treatment pursuant to the Plan.

**5.    Distributions to be Made Pursuant to the Plan**

Distributions to be made by the Disbursing Agent on account of any claim will be made as promptly as practicable. Distributions to be made by the Disbursing Agent under the Plan will be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Disbursing Agent.

Except as otherwise agreed to by the Disbursing Agent in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the schedules of liabilities filed by the Debtor with the

Court, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.

Checks issued by the Disbursing Agent to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check will be made to the Reorganized Debtor by the holder of the allowed claim to whom such check originally was issued, prior to the expiration of one hundred twenty (120) days from the date of issuance of such check.  After such date, the claim will be deemed disallowed and the monies otherwise payable on account of such claim will revest in the Reorganized Debtor free and clear of all claims and interests.

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan will be subject to any such withholding or reporting requirements.

**6.        Exculpations and Releases**

To the maximum extent permitted by law, none of the Debtor, the estate, nor any of their employees, agents, representatives, or the professionals employed or retained by any of them, whether or not by Court order (each, a "Released Person"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein.  Each Released Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

**7.      Injunctions**

The occurrence of the Effective Date after the entry of the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the estate, or their property on account of any such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

**E.      Risk Factors**

The primary risk of implementing the Plan is a continuing decline in the real estate market leading to the inability of the Reorganized Debtor to sell the 29 units of the Elm Street Property for a total amount sufficient to pay all allowed claims.  A second risk factor is the failure of the Reorganized Debtor to prevail in the FCB Litigation and achieve financial benefits sufficient to impact the Debtor's distributions under the Plan.

//

**F.    Other Provisions of the Plan**

**1.    Executory Contracts and Unexpired Leases**

**a)    Assumptions**

**(i)    Schedule of Assumed Agreements.**

On the Effective Date, Reorganized Debtor will assume the executory contracts and unexpired leases identified in **Exhibit 5**.   Attached as **Exhibit 6** is a list of the unexpired leases and executory contracts which the Debtor has rejected or will reject as of the Effective Date.  The Confirmation Order, subject to the occurrence of the Effective Date, will constitute a Court order approving the assumption, on the Effective Date, of the executory contracts and unexpired leases identified in **Exhibit 5**.

**(ii)    Cure Payments.**

Debtor is not in default of any executory contract identified in **Exhibit 5**.

**(iii)    Objections to Assumption or Proposed Cure Payments.**

Any person who is a party to an executory contract or unexpired lease that will be assumed under the Plan and who either contends that there exists a default requiring cure payments, or otherwise objects to the contemplated assumption <u>must</u> file with the Court and serve upon the Debtor and the Debtor's counsel a written statement, together with supporting declaration stating the basis for its objection and any supporting documentation for such objection.  Such statement, declaration and documentation must be filed and served not later than 10 days before the date of the Plan confirmation hearing.  Any person who fails to timely file and serve such a statement and declaration will be deemed to have waived any and all objections to both the proposed assumption and the proposed cure amount in connection with such assumption.

The Disbursing Agent will not be required to make any payment of any proposed or allowed cure amounts until that date which is 30 days after entry of a final order resolving any objection or other dispute regarding: (a) the proposed cure amount under the executory contract

or unexpired lease which the Debtor seeks to assume; (b) whether the Debtor or Reorganized Debtor has provided adequate assurance of future performance under such executory contract or unexpired lease; or (c) any other matter pertaining to a proposed assumption, the dispute and approving the assumption.

### b)    Rejections

To the extent that an executory contract or unexpired lease is not assumed, as specified in **Exhibit 5** on the Effective Date, all such executory contracts and unexpired leases shall be deemed rejected.  The Confirmation Order, subject to the occurrence of the Effective Date, will constitute an Order approving the Debtor's rejection of all such executory contracts and unexpired leases.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE 30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER. Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### 2.    Retention of Jurisdiction

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

a.    To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

b.    To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, the Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

c.    To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate;

d.    To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all matters that may be pending before the Court in this case on or before the Effective Date with respect to any person or entity related thereto;

e.    To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

f.    To determine any request for payment of administrative expenses, including but not limited to the Insider Administrative Reimbursement Claim;

g.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this case whether before, on, or after the Effective Date, including but not limited to the FCB Litigation;

h.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

i.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

j.    Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

35

k.      To issue such orders in aid of consummation of the Plan or the

Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect

to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy

Rules; and

l.      To enter a final decree closing this Case.

**G.      Prosecution of Claims and Causes of Action Including Avoidance Actions**

All Claims and causes of action of the Debtor and its estate are preserved by the Plan, and

the Reorganized Debtor will have the full power and authority to file, prosecute, settle, adjust,

retain, enforce or abandon any such Claim or cause of action as the representative of the

Debtor's estate under section 1123(b) of the Bankruptcy Code or otherwise, whether such Claims

and causes of action were commenced by the Debtor prior to the Effective Date or by the

Reorganized Debtor after the Effective Date.  In addition to the Debtor's claims against FCB as

detailed above, Debtor is investigating the extent and amount of its Avoiding Power Claims

against third parties, all of which are expressly reserved.  The Reorganized Debtor will have the

authority to file and to prosecute any and all such Claims and causes of action following the

confirmation of the Plan (and to continue with the prosecution of any such Claims and causes of

action which were commenced but not completed by the Debtor prior to the confirmation of the

Plan), and the Court will retain jurisdiction over the Debtor, the Reorganized Debtor, this Case

and this estate to resolve and to adjudicate any and all such Claims and causes of action

following the confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver

or release by the Debtor or the Reorganized Debtor of any rights or of any defenses the Debtor or

the Reorganized Debtor may have with respect to any such Claims and causes of action.

//

//

**H.      Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor.  The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

The Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on its tax liability.  The Debtor is a California limited partnership and operates as a pass-through entity with all tax attributes flowing through to the Debtor's partners.  The Debtor makes no representations regarding the potential tax consequences to creditors.


**V.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan,

whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7

liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements

for confirmation.

**A.    Who May Vote or Object**

**1.    Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but, as explained below,

not everyone is entitled to vote to accept or reject the Plan.

**2.    Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or

interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2)

classified in an impaired class.

**a)    What Is an Allowed Claim/Interest**

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u>

to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party

in interest brings a motion objecting to the claim.  When an objection to a claim or interest is

filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court,

after notice and hearing, either overrules the objection or allows the claim or interest for voting

purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE was **<u>June 15,</u>**

**<u>2011</u>** for non-governmental entities and is September 6, 2011, for governmental entities.  A

creditor or interest holder may have an allowed claim or interest even if a proof of claim or

interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's

schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no

party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

### b)    What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Debtor believes that Classes 1 through 19 are impaired and Classes 1 through 19 are entitled to vote to accept or reject the Plan.  Parties who dispute the Debtor's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the class.

### 3.    Who is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

//

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Bankruptcy Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" towards each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law. The Debtor

believes the Plan may be confirmed on a non-consensual basis and will show same at the confirmation hearing if necessary.

### 8. Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The Debtor will request cramdown on any impaired classes who do not vote to accept the Plan.

## B. Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

The fair market value of the Debtor's Property if sold as a single 29-unit building, or at a foreclosure sale, or if the 29 units were sold by auction, is <u>less</u> than the amount of the secured claim of FCB who holds a claim in the amount of $17,568,135.70 as of the date the case was filed, which is secured by a first priority trust deed. Absent equitable subordination or other significant reduction of FCB's claim, if liquidation were to occur, junior secured creditors and general unsecured creditors would not receive anything. However, the Debtor's Liquidation Plan proposes an orderly sale of the 29 units to maximize value and pay all net sale proceeds to secured creditors in order of priority, and then any allowed Insider Administrative Reimbursement Claim, and then to unsecured creditors, and then, if applicable, to equity interest holders.

//

//

The Debtor therefore believes that unsecured creditors will undoubtedly receive more under the Plan than they would receive in a chapter 7 liquidation of the Debtor.  Below is a demonstration that all creditors and interest holders will receive at least as much under the Plan as such creditor would receive under a chapter 7 liquidation:

**ASSETS VALUE AT LIQUIDATION VALUES:**

|   |   |   |   |
|---|---|---|---:|
| a. | Real Estate (if sold as single 29-unit building): | $ | 17,000,000.00 |
| b. | Cash (HOA deposit): | $ | 90,000.00 |
| c. | Judgment (collectability unknown): | $ | 228,418.00 |
| d. | Claim against FCB (only Debtor would pursue): | $ | .00 |

| | | |
|---|---|---:|
| **TOTAL ASSETS AT LIQUIDATION VALUES:** | **$** | **17,318,418.00** |
| **Less:** | | |
| Secured Creditor's Recovery  (Classes 1-18) | $ | 18,597,399.53 |
| **Less:** | | |
| Chapter 7 Trustee fees | $ | .00[1] |
| **Less:** | | |
| Chapter 7 Administrative Expenses | $ | .00 |
| **Less:** | | |
| Chapter 11 Administrative Expenses | $ | 65,350.00 |
| **Less:** | | |
| Priority Claims, Excluding Administrative Expense Claims | $ | 1,629.28 |
| **TOTAL COSTS:** | **$** | **18,664,378.81** |

| | | |
|---|---|---:|
| (1) Balance for unsecured claims: | $ | 0.00 |
| (2) Total amount of unsecured claims: | $ | 422,663.11 |
| (depends on litigation) | | |

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS
WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION: = 0%**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL
RECEIVE OR RETAIN UNDER THIS PLAN (DEPENDS
ON OUTCOME OF LITIGATION): = 0%-100%**

**C.**    **Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for

---

1 Chapter 7 Trustee would abandon property to FCB.

further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date to pay all the claims and expenses which are entitled to be paid on such date.  The Debtor maintains that this aspect of feasibility is satisfied as the Debtor will receive a contribution from Queenie Properties, LLC sufficient to cover all payments required on the Effective Date of the Plan as well as to fund the ongoing carrying costs of the Elm Street Property during the implementation of the marketing strategy and sale of the units.

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments.  The Debtor is doing everything possible to maximize sale proceeds for distribution under the Plan.  The Debtor is in the process of selecting a preferred lender and obtaining the necessary project approvals from the FHA and Fannie Mae to allow buyers numerous financing options.  In addition, the Debtor's marketing plan encompasses both local and international buyers looking for reasonably priced condominiums in the well-known Beverly Hills area with a broad reach via the internet, open houses, print ads and general networking among brokers.

//

//

//

//

//

//

//

43

# VI.

## EFFECT OF CONFIRMATION OF PLAN

**A.    Revesting of Property in the Reorganized Debtor**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Reorganized Debtor.  In addition, on the Effective Date, all of the claims against and/or interests in third parties that constitute property of the estate shall be revested in the Reorganized Debtor.

**B.    Modification of Plan**

The Debtor may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

**C.    Post-Confirmation Status Report**

Within one hundred twenty (120) days of the entry of the order confirming the Plan, the Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the 20 largest unsecured creditors, and those parties who have requested special notice after the Effective Date.  Further status reports shall be filed every 120 days and served on the same entities.

**D.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States

Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an

order of dismissal or conversion to Chapter 7.

**E.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the Case under §

1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If the Court

orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had

been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will

revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property,

but only to the extent that the Court did not previously authorize relief from stay during the Case.

The order confirming the Plan may also be revoked under very limited circumstances.

The Court may revoke the order if the order of confirmation was procured by fraud and if the

party in interest brings an adversary proceeding to revoke confirmation within 180 days after the

entry of the order of confirmation.

**F.    Final Decree**

Once the estate has been fully administered as referred to in Rule 3022 of  the Federal

Rules of Bankruptcy Procedure, the Debtor or other party as the Court shall designate in the

order confirming the Plan, shall file a motion with the Court to obtain a final decree to close the

Case.

//

//

//

//

//

//

**G.    Conclusion**

      If the Plan is not confirmed, unsecured creditors will likely receive nothing in respect of their claims because FCB will be allowed to foreclose on the Property and there are no other assets from which distributions to creditors can be made. Accordingly, the Debtor believes confirmation of the Plan is clearly in the best interests of creditors and recommends that creditors vote in favor of the Plan.

Dated: June 22, 2011

                                  ELM STREET PARTNERS, LLC

                                    By: Denis Hann, Manager of Queenie
                                    Properties, LLC, Managing Member of
                                    Debtor

Presented By:

WEINTRAUB & SELTH, APC

By:_____
    Daniel J. Weintraub
    James R. Selth
    Attorneys for Chapter 11 Debtor
    and Plan Proponent

## DECLARATION OF DENIS HANN

I, Denis Hann, hereby declare:

1.     I am the manager of Queenie Properties, LLC., which is the managing member of Elm Street Partners, LLC, the debtor and debtor-in-possession herein.  Unless otherwise set forth herein, I have personal knowledge of the facts set forth herein and, if called to testify, I could and would competently testify thereto.

2.     I make this declaration in support of this disclosure statement ("Disclosure Statement") which describes the Debtor's Plan of Reorganization.

3.     To the best of my knowledge, information and belief, all of the information contained in this Disclosure Statement is truthful and accurate.

I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 22nd day of June, 2011, in Santa Monica, California.


DENIS HANN.

47

# EXHIBIT "1"

Central District of California

IN RE:

Case No. <u>2:11-bk-20225-PC</u>

<u>Elm Street Partners, LLC</u>

Chapter <u>11</u>

Debtor(s)

## LIST OF EQUITY SECURITY HOLDERS

| Registered name and last known address of security holder | Shares (or Percentage) | Security Class (or kind of interest) |
|---|---|---|
| Adam Silbar<br>5554 Reseda Blvd., #202<br>Tarzana, CA 91356 | 1.449900 | Member |
| Afilliated Capital Resources Defined<br>Benefit Pension Plan<br>1349 Franklin St.<br>Santa Monica, CA 90404 | 5.331400 | Member |
| Anil Chandwani Revocable Trust<br>701 Ocean Ave.<br>Santa Monica, CA 90404 | 1.066300 | Member |
| Arcangeli Family 1992<br>Recovable Declaration Of Trust<br>459 21st Place<br>Santa Monica, CA 90402 | 6.922200 | Member |
| Brett Silver<br>1734 S. Westgate Ave.<br>Los Angeles, CA 90025 | 1.144600 | Member |
| Cahoot Partners, LLC<br>C/O Brian Stocker<br>1138 20th St., #9<br>Santa Monica, CA 90403 | 9.610200 | Member |
| Charles Pence Retirement Trust<br>2602 33rd St.<br>Santa Monica, CA 90405 | 4.800400 | Member |
| Deborah Irmas<br>243 23rd St.<br>Santa Monica, CA 90402 | 1.454700 | Member |
| Denyse Orvis<br>12500 Indianapolis St.<br>Los Angeles, CA 90066 | 0.946800 | Member |
| Ester, Carol & Jeff<br>1112 Montana Ave. Suite 464<br>Santa Monica, CA 90403 | 5.448600 | Member |
| Jason Pence<br>2602 33rd St.<br>Santa Monica, CA 90405 | 0.557300 | Member |
| Joan & Harold Kern<br>9401 Wilshire Blvd., Ste. 700<br>Beverly Hills, CA 90212 | 1.169500 | Member |
| John Clinton Hathorn Retirement Trust<br>30616 Rayo Del Sol<br>Malibu, CA 90265 | 1.831400 | Member |
| Joshua Pence<br>2602 33rd St.<br>Santa Monica, CA 90405 | 0.784300 | Member |
| Lewis Abulafia<br>1731 Bruce Rd.<br>Carlsbad, CA 92008 | 2.182000 | Member |

© 1993-2011 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

| | | |
|---|---|---|
| Lorraine Silver<br>1308 California Ave., #34<br>Santa Monica, CA 90403 | 2.780100 | Member |
| Maxine Geller<br>P.O. Box 675707<br>Rancho Sante Fe, CA 92067 | 1.454700 | Member |
| Melissa Harrub Alt Defined Benefit<br>Pension Plan<br>8928 Carson St.<br>Culver City, CA 90232 | 1.293500 | Member |
| Michael Glasser<br>122 Channel Point Mall<br>Marina Del Rey, CA 90292 | 0.832100 | Member |
| Nili Hudson<br>3440 Wade St.<br>Los Angeles, CA 90066 | 1.161500 | Member |
| Paula Abulafia<br>1731 Bruce Rd.<br>Carlsbad, CA 92008 | 2.182000 | Member |
| Queenie Properties, LLC<br>415 7th St.<br>Santa Monica, CA 90402 | 13.845100 | Member |
| Rebecca W. Stocker<br>1138 20th St., #9<br>Santa Monica, CA 90403 | 2.118800 | Member |
| Ron F. Smith<br>169 N. Canyon View Dr.<br>Los Angeles, CA 90049 | 1.040100 | Member |
| Rosanna Locke<br>3435 Ocean Park Blvd. # 107-98<br>Santa Monica, CA 90405 | 1.163700 | Member |
| Shilyansky MD, Inc.<br>Defined Benefit Pension Plan<br>803 Winston Ave.<br>San Marino, CA 91108 | 5.928400 | Member |
| Stanley Goldenberg<br>841 Stanford<br>Santa Monica, CA 90403 | 4.401800 | Member |
| Survivors Trust Under<br>The Diamond-Johnson Familty Trust<br>12244 Dorothy St.<br>Los Angeles, CA 90049 | 4.273500 | Member |
| Tamkin Family Ltd. Partnership<br>2100 Sawtelle Blvd., Ste. 201<br>Los Angeles, CA 90025 | 12.693000 | Member |
| Veronica Klein<br>979 S. Carmelina Ave.<br>Los Angeles, CA 90049 | 0.832100 | Member |

© 1993-2011 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

# EXHIBIT "2"

## DECLARATION OF DAVID KRAMER

I, David Kramer, declare as follows:

1.   I am and have been a real estate salesperson licensed by the California Department of Real Estate since 1988 and I am associated with Hilton & Hyland, Christie's International Real Estate, the proposed broker for Elm Street Partners, LLC, the debtor and debtor-in-possession in this case (the "Debtor").   I have personal knowledge of all of the following facts and if I am called upon to testify, I could and would competently testify hereto under oath.

2.   This declaration is submitted in support of the Debtor's Motion for Order Authorizing Employment of Hilton & Hyland, Christie's International Real Estate ("H&H") as real estate broker for the estate in connection with the sale of the twenty-nine (29) condominium units located at 304 S. Elm Drive, Beverly Hills, California (collectively, the "Units").

3.   Subject to the Court's authorization allowing the Debtor to retain H&H, H&H has agreed to provide the services necessary to sell the Units.  A true and correct copy of my proposed Residential Listing Agreement is attached hereto as **Exhibit "A"**.

4.   I believe I am uniquely qualified to handle the sale of the Units as I recently sold out all 22 condominium units at a condominium conversation located at 9601 Charleville Boulevard in Beverly Hills, which is approximately one-half mile from the Units.  On this project, I achieved the highest price per square foot in Los Angeles for an entire building.

5.   In addition, I have developed a marketing plan encompassing not only local targeted buyers but also national and

1  international buyers looking to live in Beverly Hills.

2      6.   Attached as **Exhibit "B"** to this Declaration is a copy of

3  my curriculum vitae.

4      7.   To the best of my knowledge, neither H&H nor I

5  hold or represent any interest adverse to Debtor or to the Chapter

6  11 estate with reference to the employment proposed by this

7  Application.

8      8.   Neither H&H nor I have any known connection with

9  the creditors of the estate, the Office of the United States

10 Trustee, the presiding judge or any other party in interest and

11 have no pre-petition claim against the estate.

12     9.   Neither H&H nor I have any prior connection with

13 the Debtor or any insider.

14     10.  The scope, terms and conditions of the proposed

15 employment are summarized as follows:

16     A.   H&H shall act as the broker for the bankruptcy estate

17 on an exclusive basis in the marketing and sale of the Debtor's

18 Property properties for a period of eighteen (18) months.

19     B.   Upon completion of the sale of each unit, as approved

20 by the Court, H&H shall be entitled to a commission as set forth

21 in the Listing Agreement.

22     11.  I toured the Units on March 29, 2011 and have developed

23 a list of values and pricing.  In my opinion, the aggregate value

24 of all twenty-nine (29) units is slightly over $20,000,000.00.  A

25 true and correct copy of my unit by unit valuation is attached

26 hereto as **Exhibit "C".**

27 //

28 //

53

1    I declare under penalty of perjury, under the laws of the
2 United States, that the foregoing is true and correct, and that
3 this declaration was executed by me on the 30th day of March, 2011,
4 at Los Angeles, California.

David Kramer

# EXHIBIT "A"
# OMITTED

# EXHIBIT "B"



# About David Kramer



**Executive Vice President, Hilton & Hyland, Christie's International Real Estate**

David is uniquely qualified to sell the property at 304 S. Elm Drive because:

David represented and sold out all 22 units at 9601 Charleville Boulevard in Beverly Hills. Charleville was an apartment to condominium conversion about half a mile away and very similar to 309 S. Elm Drive. On this project David achieved the highest price per square foot in Los Angeles for an entire building. David and his team created a unique marketing program that not only targeted local buyers, but national and International buyers looking to live in Beverly Hills. This program proved to be very effective as a large percentage of the building was sold to people not based in Los Angeles. In fact for many of the buyer's this was their second or third home, which I feel will be the case with 304 S. Elm Drive. We will use the extensive Hilton & Hyland data base for our out of town clients as well as our own list which we have compiled throughout the years.

David Kramer has consistently been a top producing agent representing Buyers and Sellers of major estates, condominiums, and unique properties throughout the Westside for over two decades. His expertise and talent have made him a recognized leader in the real estate industry. He is based in Beverly Hills and specializes in the areas of Beverly Hills, Beverly Hills Post Office, Bel-Air, Westwood, Brentwood, Santa Monica, and the Pacific Palisades.

David's success can be attributed in part to his exceptionally high standards, quality values, integrity, great people skills and negotiation savvy. He is enthusiastic about leading cutting edge technology and prides himself on maximizing the effectiveness of all new resources in a way to best serve his clients. David also brings an intimate knowledge of the high end real estate world and with his customized personal approach to buying and selling houses; it has made him one of the top selling agents in Los Angeles year after year. This is accomplished with the crack team of Wendy Callister who has over 25 years of real estate management experience, Visual Eyes Studio (website development), Santa Monica Internet Services (search engine optimization and management), and Andrew Page who provides full time marketing services for the team. In addition, we are also supplemented full time by the established Hilton and Hyland marketing and graphics team.



# About David Kramer Continued....



A Los Angeles native, David earned his Bachelor of Science degree in Economics and Finance from Cal State Northridge. He has since been actively involved with several charitable foundations, including The American Cancer Society, Remote Area Medical, Reach Across America, Project Angel Food, and the Chaka Khan Foundation. Volunteering as a Big Brother, David was proud to support the most effective youth mentoring organization in the country.

Tirelessly dedicated to his clients and community, David currently represents Cedars Sinai Hospital, Law firms, Family Trusts, Corporate and other institutions in the buying and selling of residential and residential income assets.

For many years David has garnered a steady stream of referrals from law firms who place their trust in David, and he has a very keen awareness of legal boundaries to help protect clients from unnecessary legal issues. David was one of the top agents representing California Federal bank (now Citibank) in REO sales and was instrumental in updating the company's sales approach.

In addition to his real estate and development career, David was a founding investor and board member of Fresh Dining, now Freshology. Freshology's mission statement is to provide clients with an extraordinarily effective program for weight loss and wellness. Freshology utilizes a unique curriculum that combines healthy gourmet meals and distinctive professional life guidance tools to support each client on an enlivening journey toward self-improvement.

Visit David's website at www.premierlaproperties.com for further information about David and his listings.

58

# EXHIBIT "C"

| Unit # | Bed-Bath | Sq. Ft. | parking | prices | $/sq ft |
|--------|----------|---------|---------|--------|---------|
| 101 | 1+1 | 1,000 | 1 | $599,000 | $599 |
| 202 | 1+2 | 1,045 | 1 | $599,000 | $573 |
| 204 | 1+D+2 | 1,140 | 1 | $629,000 | $552 |
| 302 | 1+2 | 1,065 | 1 | $619,000 | $581 |
| 402 | 1+2 | 1,045 | 1 | $669,000 | $640 |
| 102 | 1+2 | 1,330 | 1 | $569,000 | $428 |
| 304 | 1+D+2 | 1,135 | 1 | $629,000 | $554 |
| 502 | 1+2 | 1,045 | 1 | $725,000 | $694 |
| 404 | 1+D+2 | 1,135 | 1 | $679,000 | $598 |
| 504 | 1+D+2 | 1,135 | 1 | $750,000 | $661 |
| 105 | 1+D+2 | 1,435 | 1 | $699,000 | $523 |
| 203 | 1+D+2 | 1,355 | 1 | $619,000 | $457 |
| 303 | 1+D+2 | 1,285 | 1 | $659,000 | $513 |
| 205 | 1+2 | 1,370 | 1 | $669,000 | $488 |
| 403 | 1+D+2 | 1,285 | 1 | $689,000 | $536 |
| 305 | 1+2 | 1,370 | 1 | $619,000 | $452 |
| 106 | 1+D+2 | 1,300 | 1 | $699,000 | $538 |
| 503 | 1+D+2 | 1,285 | 1 | $769,000 | $598 |
| 201 | 1+D+2 | 1,350 | 2 | $679,000 | $503 |
| 405 | 1+2 | 1,350 | 1 | $675,000 | $500 |
| 206 | 1+D+2 | 1,380 | 2 | $689,000 | $499 |
| 301 | 1+D+2 | 1,350 | 2 | $699,000 | $518 |
| 306 | 1+D+2 | 1,380 | 2 | $729,000 | $528 |
| 505 | 1+2 | 1,370 | 1 | $775,000 | $566 |
| 401 | 1+D+2 | 1,350 | 2 | $739,000 | $547 |
| 406 | 1+D+2 | 1,380 | 2 | $779,000 | $564 |
| 501 | 1+D+2 | 1,350 | 2 | $799,000 | $592 |
| 506 | 1+D+2 | 1,380 | 2 | $849,000 | $615 |
| PH | 2+D+2.5 | 1,500 | 2 | $1,300,000 | $867 |
| | | | | | |
| | | 36,900 | 37 | $20,002,000 | $542.06 |



60

# EXHIBIT "3"

List of Claims Secured

| | Creditor | Scheduled Amount | Proof of Claim | Claim # |
|---|---|---|---|---|
| 1 | First Citizens Bank | N/A | $17,568,135.70 | |
| 2 | Joseph D. Block | N/A | $181,350.00 | 6 |
| 3 | Joe and Caron Block | N/A | included in above | 6 |
| 4 | Clifford Muller | $140,000.00 | N/A | |
| 5 | Eagleston Pacific | N/A | $16,108.00 | 15 (U) |
| 6 | Pico Cabinets & Contracting, Inc. | $9,122.00 | N/A | |
| 7 | Construction Management and Supervision | N/A | $269,715.27 | 7 |
| 8 | Penhall Company | $2,550.00 | N/A | |
| 9 | Express Flooring 2000 dba Roma Flooring | $61,149.00 | N/A | |
| 10 | Loreno Leandro, dba Ultimate Painting Services | N/A | $72,751.94 | 8 |
| 11 | Hakim Electric | $19,068.32 | N/A | 8 |
| 12 | Karl Brook | N/A | $188,041.89 | 9 |
| 13 | Ontario Refrigeration Service Inc. | $45,619.00 | N/A | |
| 14 | Rolling Stone Tile & Marble | N/A | $9,251.82 | 13 (U) |
| 15 | Mark R. Poole Construction | $2,270.00 | N/A | |
| 16 | Francisco F.D.M. Construction | $4,500.00 | N/A | |
| 17 | Sign Zone, Inc. | $4,013.86 | N/A | |
| 18 | Swedelson & Gottlieb | N/A | $3,752.73 | 1 |
| | *Total* | *$288,292.18* | *$18,309,107.35* | |

# EXHIBIT "4"

List of Claims Unsecured

| Creditor | Scheduled Unsecured Amount | Proof of Claim | Claim # |
|---|---|---|---|
| Construction Management and Supervision | $.00 (only secured claim of this creditor was scheduled by Debtor) | $352,929.86 ($259,507.25 of this amount includes duplicate claims of 37 subcontractors and vendors who are all individually scheduled by Debtor, some of whom have filed their own claims. These are all marked # in right column. This amount is not included in total below) | 7 |
| AJ Plumbing | $7,600.00 | N/A | # |
| Allen Robert Block | N/A | $89,236.25 | 2 |
| Altered Glass, Inc. | $6,168.00 | N/A | # |
| Andy Gump | $206.83 | N/A | # |
| Brothers Concrete Cutting | $750.00 | N/A | # |
| CJ Design Group | $154.53 | N/A | # |
| Craig Fire Protection Co., Inc. | $10,790.71 | N/A | # |
| Eaglestone Pacific, Inc. | N/A | $16,108.00 (claim is actually secured) | 15 # |
| Emanuel Napolitano | N/A | $12,400.00 (claim is actually secured) | 3 # |
| Express Flooring, dba Roma Flooring | $54,002.04 (claim is actually secured) | N/A | # |
| FDM Construction | $4,500.00 (claim is actually secured) | N/A | # |
| Hakim Electric | $19,068.32 (claim is actually secured) | N/A | # |
| Imperial Windows & Doors | $10,490.07 | N/A | # |
| IZ Construction, Inc. | $12,962.65 | N/A | # |
| JAD Roofing | $450.00 | N/A | # |
| Jeffrey Segal | N/A | $100,442.32 | 12 |
| JZ Terrazzo | $1,264.00 | N/A | # |
| Karl Brook | N/A | $18,247.91 | 9 |

| | | | |
|---|---|---|---|
| KCE Matrix | N/A | $8,168.65 | 10 # |
| Laura Schwartz Design | $3,200.00 | N/A | # |
| Mark R. Poole Construction | $2,270.00 (claim is actually secured) | N/A | # |
| MC Landcorp | $3,364.60 | N/A | # |
| NE Design | $1,326.00 | N/A | # |
| Newson Brown | $262.50 | N/A | # |
| Penhall Company | $2,550.00 (claim is actually secured) | N/A | # |
| Performance Elevator | $1,623.00 | N/A | # |
| Pico Cabinets & Contracting, Inc. | $9,122.00 (claim is actually secured) | N/A | # |
| Rick's Gate Works | $882.30 | N/A | # |
| Rolling Stone Tile & Marble | N/A | $9,215.82 (claim is actually secured) | 13 # |
| Sandra Gottlieb | $3,000.00 (Duplicate of Swedelson & Gottlieb) | N/A | |
| Sign Zone | $4,013.86 (claim is actually secured) | N/A | # |
| Six14 Productions | $400.00 | N/A | # |
| Star Construction | $600.00 | N/A | # |
| Steven J. Revitz / Raiskin & Revitz | N/A | $6,915.80 | 4 |
| Stewart Title Guaranty Company | N/A | $718,992.08 (This entire claim is on an indemnification agreement for four subcontractors who are all individually scheduled by Debtor as secured creditors and all of whom have filed their own claims. This amount is not included in total below) | 14 |
| Subsurface Imaging, Inc. | $750.00 | N/A | # |
| Swedelson & Gottlieb | N/A | $3,752.73 (claim is actually secured) | |
| The Floor Club | N/A | $10,913.38 | 16 # |
| Tycho Services | $2,431.00 | N/A | # |

| | | | |
|---|---|---|---|
| Valley Alarm | $7,925.00 | N/A | # |
| Veneklasen Associates | $2,350.00 | N/A | # |
| Vertical Solutions, Inc. | $18,865.00 | N/A | # |
| WDHI | $500.00 | N/A | # |

**SUBTOTAL**        $95,316.19                $327,346.92

**TOTAL**                                    **$422,663.11**

66

# EXHIBIT "5"

# EXHIBIT 5 - LIST OF EXECUTORY CONTRACTS TO BE ASSUMED

## NONE KNOWN

# EXHIBIT "6"

69

# EXHIBIT 6 – LIST OF EXECUTORY CONTRACTS TO BE REJECTED

## NONE KNOWN

| In re:<br><br>ELM STREET PARTNERS, LLC<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER  2:11-bk-20225-PC |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:  11766 Wilshire Blvd., Suite 1170, Los Angeles, California 90025.

A true and correct copy of the foregoing document: **DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION OF ELM STREET PARTNERS, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 22, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- David K Eldan    malvarado@pmcos.com, rpinal@pmcos.com;calendar@pmcos.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Michael J Ireland    michael@mireland.us
- Alyssa B Klausner    abk@sghoalaw.com
- Phillip H Kwon    phillip@kwonkimlaw.com
- Kenneth G Lau    kenneth.g.lau@usdoj.gov
- Queenie K Ng    queenie.k.ng@usdoj.gov
- James R Selth    jim@wsrlaw.net, charles@wsrlaw.net
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Daniel J Weintraub    dan@wsrlaw.net, charles@wsrlaw.net;erika@wsrlaw.net

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On June 22, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 22, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
Chambers of the Hon. Peter Carroll, United States Bankruptcy Court – Los Angeles Division

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 22, 2011 | Jordan Weinstock | _Jordan Weinth_ |
|---|---|---|
| _Date_ | _Type Name_ | _Signature_ |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_January 2009_                                                                                           **F 9013-3.1**